UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RICKY RENE ANDERSON,

    Petitioner,

v().                                                        Case No. 8:06-cv-186-T-23TBM

SECRETARY, Department of Corrections,

    Respondent.
_____/

## **O R D E R**

Anderson petitions for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) and challenges the validity of his state conviction for aggravated battery of a pregnant female, for which conviction Anderson serves fifteen years. Numerous exhibits ("Respondent's Exhibit __") support the response (Doc. 5). The respondent admits the petition's timeliness (Response at 5 Doc. 5-6).[1]

## **FACTS**[2]

Anderson and the victim dated for about eight months during 2001. The victim ended the relationship after learning that she was pregnant. Anderson wanted to continue the relationship and pursued the victim because of the pregnancy. The victim

---

[1] Two indictments charged Anderson with aggravated battery of a pregnant female. After a jury found him guilty of the charge in one indictment, Anderson pleaded guilty to the second indictment. Both convictions are identified on the face of the federal petition. The respondent correctly argues (Doc. 5) that Anderson's challenge to the plea-based conviction is untimely. In reply (Doc. 7), Anderson clarifies that he challenges only the trial-based conviction. The plea-based conviction forms no part of the record in this action.

[2] This summary of the facts derives from Anderson's brief on direct appeal (Respondent's Exhibit 2).

refused to see Anderson and refused his incessant telephone calls. Ultimately, Anderson forced his way into the victim's home and, during a struggle, hit her. Two months after the imposition of a habitual offender sentence, the victim sent a letter to Anderson in which she recanted her trial testimony and alleged that Anderson had no knowledge of the pregnancy.

Anderson presented the recantation claim to the state courts in a Rule 3.850 motion for post-conviction relief. The post-conviction court conducted an evidentiary hearing and rejected the credibility of the victim's recantation. The only ground in the federal petition challenges that ruling.

## **STANDARD OF REVIEW**

Because this action commenced after April 24, 1996, Section 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs this proceeding. Wilcox v. Florida Dep't of Corrections, 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000). Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." Bell v. Cone, 535 U.S. 685, 694 (2002); Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide.").

The state appellate court affirmed (Respondent's Exhibit 4) Anderson's conviction and sentence on direct appeal in a per curiam decision without a written opinion, and likewise affirmed (Respondent's Exhibit 9) the denial of his subsequent Rule 3.850 motion for post-conviction relief. The state appellate court's per curiam affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." Wright v. Moore, 278 F.3d

- 3 -

1245, 1254 (11th Cir.), reh'g and reh'g en banc denied, 278 F.3d 1245 (2002), cert. denied sub nom Wright v. Crosby, 538 U.S. 906 (2003).

Anderson bears the burden of overcoming a state court factual determination by clear and convincing evidence. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies only to a finding of fact, not a mixed determination of law and fact. Parker v. Head, 244 F.3d 831, 836 (11th Cir.), cert. denied, 534 U.S. 1046 (2001). Consequently, this court must defer to the finding of fact in the post-conviction court's rejection of Anderson's post-conviction claim (Order Denying Motion for Post-Conviction Relief, Respondent's Exhibit 6).

## ANALYSIS

Liberally construing the petition, Anderson presents the claim he raised on appeal from the denial of his Rule 3.850 motion for post-conviction relief: the post-conviction court abused its discretion in rejecting the credibility of the victim's recantation. The post-conviction court rejected Anderson's claim after carefully considering the victims' various statements.

> In his Motion, Defendant claims newly discovered evidence due to the victim's recantation of her trial testimony. Specifically, Defendant claims the victim has recanted her trial testimony regarding Defendant's knowledge of her pregnancy at the time of the alleged offense. On August 30, 2001, Defendant was found guilty of Aggravated Battery (Pregnant Woman), a violation of § 784.045(1)(b), Florida Statute. "To be convicted under § 784.045(1)(b), a defendant must possess a heightened knowledge about the victim's condition, a knowledge beyond that required for the general intent crime of misdemeanor battery." Firth v. State, 764 So. 2d 734, 735 (Fla. 2d DCA 2000). Defendant claims that at the time of the

alleged offense, he was not aware that the victim was pregnant. Defendant has attached to his Motion, a copy of a deposition taken of the victim Bernadette Van Walker where she allegedly recants her trial testimony and states that Defendant could not have known that she was pregnant.

At the April 20, 2004, evidentiary hearing, Ms. Bernadette Walker testified that at the time of the incident, she did not directly tell Defendant she was pregnant. However, when asked why she testified at trial that Defendant knew that she was pregnant at the time of the incident, Ms. Walker testified as follows:

> Because like I said I had spoken to people that he should have been surrounded and they knew that I was pregnant which was because I was friends with some of his family members so I'm assuming that he knew and for him, you know, just to leave me alone.

She further testified that after the sentencing hearing, she wrote a letter, admitted as Defense Exhibit #1, to the judge and public defender that Defendant did not know that she was pregnant at the time of the incident. She also testified that she had her deposition taken by Mr. Kyle Pennington, but when asked if she told Mr. Pennington that Defendant did not know she was pregnant, Ms. Walker testified as follows:

> Well, really I can't speak for it but I just know I didn't directly tell him because I wasn't talking to him.

However, she testified that she recalled stating in that deposition that she had mentioned her pregnancy to Defendant, but he didn't believe her.

At that same hearing, Ms. Walker testified that she did recall giving a sworn statement to police officers, and when asked if she recalled stating to the officer while under oath that Defendant was aware that she was pregnant with his child, Ms. Walker did not deny making that statement to the police. She further recalled speaking to Yolanda from victim assistance with the State Attorney's Office on June 18, 2001, and when asked if she told Yolanda that Defendant was aware that she was pregnant, she did not deny making such statement to Yolanda. Ms. Walker then admitted to signing a waiver of prosecution on June 28, 2001, and admitted to not putting anything in the waiver about Defendant not knowing she was pregnant.

Ms. Walker also confirmed giving a deposition in August of 2001, and recalled testifying at said deposition that at the time of the incident,

Defendant knew that she was pregnant.  She then recalled testifying at trial on August 30, 2001, that Defendant knew she was pregnant at the time of the incident, but tried to explain her answer by stating that she erroneously assumed he knew but she did not tell him directly.  However, when asked if he knew or if she was just saying he didn't believe her, Ms. Walker testified as follows:

> He probably knew from somebody else - - he probably knew it from somebody else.  He probably didn't believe me because of a prior situation that happened between us.

She then confirmed her trial testimony that she told him the day she found out, but again tried to explain her answer by stating that she didn't speak to him after she went to the doctor.

At that same hearing, Defendant's sister Patricia Anderson testified that although Ms. Walker told her that she was pregnant, Ms. Anderson testified that she never told Defendant that Ms. Walker was pregnant.  Moreover, when asked if Defendant ever told her that he knew Ms. Walker was pregnant at the time the incident occurred, Ms. Anderson stated, "No, he stated to me that I did not know that Bernadette was pregnant.  Why didn't you all tell me?"

Defendant also testified at the hearing, and stated that he did not know Ms. Walker was pregnant at the time of the alleged incident.  He further testified that Ms. Walker never told him she was pregnant, nobody in his family told him that she was pregnant, and nobody else told him that she was pregnant.  Defendant also testified that he had no reason to believe she was pregnant.

After reviewing the allegations, the deposition of Bernadette Walker, the testimony, evidence, and argument presented on April 20, 2004, the court file, and the record, the Court finds that Ms. Walker's consistent statements regarding Defendant's knowledge of her pregnancy made to the police, made on June 18, 2001, to Yolanda with the State Attorney's Office, and during the August 2001 deposition are more credible than the statements Ms. Walker made in the post sentencing letter and the post sentencing deposition with Mr. Kyle Pennington.  The Court further finds that although Ms. Walker states in her deposition with Mr. Pennington that she did not tell Defendant that she was pregnant, she also makes statements during that same deposition, that Defendant did not believe she was pregnant.  Consequently, this Court finds that Ms. Walker's recantation is not credible, and would not have changed the outcome of the trial.

- 6 -

Respondent's Exhibit 6 at 80-83 (citations to record omitted).

Anderson presents no argument that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. . . ." 28 U.S.C. § 2254(d)(1). Instead, the substance of Anderson's argument is that the state court's decision is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

A federal court must defer to the state court's findings of fact.

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). This deference to credibility determinations is well established. Baldwin v. Johnson, 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination and thus credit [the attorney's] testimony over [the petitioner's]."), cert. denied, 526 U.S. 1047 (1999); Devier v. Zant, 3 F.3d 1445, 1456 (11th Cir. 1993) ("Findings by the state court concerning historical facts and assessments of witness credibility are, however, entitled to the same presumption accorded findings of fact under 28 U.S.C. § 2254(d)."), cert. denied, 513 U.S. 1161 (1995). Other than his disagreement with the outcome, Anderson presents no basis for rejecting the post-conviction court's credibility determination. Consequently, Anderson fails to meet his burden of rebutting the presumption of correctness by clear and convincing evidence.

Accordingly, the petition for the writ of habeas corpus is **DENIED**.  The clerk shall enter a judgment against Anderson and close this action.

ORDERED in Tampa, Florida, on October 31, 2008.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE